UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| vs. | ) Case No. 24-cr-417 (CKK) |
| KUNAL MEHTA, Defendant. | ) |

**DEFENDANT KUNAL MEHTA'S MOTION TO REOPEN
DETENTION HEARING AND FOR RELEASE PENDING SENTENCING**

Defendant Kunal Mehta, by and through counsel, respectfully submits this motion for release pending sentencing pursuant to 18 U.S.C. § 3142(a)(2). The reasons and circumstances underlying the Court's prior determination in June 2025 that Mr. Mehta presented a flight risk are now obviated.[1] As set forth in more detail below, Mr. Mehta has now taken full responsibility for his unlawful conduct, provided the Government with full insight into his finances, and forfeited the funds in his bank accounts and cryptocurrency wallets and the property representing the proceeds of his criminal conduct. As a result, there is no longer a basis to conclude that Mr. Mehta presents a flight risk. Accordingly, Mr. Mehta respectfully requests that the Court re-weigh the Section 3142(g) factors and order his release with conditions pending sentencing.

---

[1] Undersigned counsel's understanding is that the Government does not dispute any of the factual assertions underlying this motion. In other words, the Government does not dispute that the facts giving rise to the Court's concerns that Mr. Mehta might flee the country—namely, because he appeared to have access to large amounts of money, international ties, and insufficient ties to the community—are no longer an issue or have been substantially mitigated.

## I. LEGAL STANDARD

Before a plea or trial, an individual charged with a crime must be released pending disposition of the case unless there is a "serious risk" that the person will flee or poses a danger to the community, and no condition or combination of conditions can reasonably assure his or her appearance or address the risk of danger. 18 U.S.C. § 3142. At that stage, the burden is on the government to establish the serious risk of flight and/or dangerousness. *See*, *e.g.*, *United States v. Munchel*, 991 F.3d 1273, 1279-80 (D.C. Cir. 2021). Even if the individual is detained pending trial, the issue of detention can be reopened if there is new information or a change in circumstances. "[T]he determination that a criminal defendant must be detained pursuant to section 3142(g) 'may be reopened' at any time prior to trial if new information surfaces that has a 'material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.'" *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020) (citing 18 U.S.C. § 3142(f)).

When, as here, an individual has pleaded guilty, the legal standard regarding detention changes somewhat. After a plea, the burden shifts to the defendant to establish "by clear and convincing evidence" that he is "'not likely to flee or pose a danger to the safety of any other person or the community if released' on personal recognizance or on conditions." *See*, *e.g.*, *United States v. Edelman*, No. 24-239-1 (CKK), 2025 WL 1725957, at *3 (D.D.C. June 20, 2025) (quoting 18 U.S.C. § 3143(a)(1)). Even in that case, however, the court makes the same evaluation of the flight risk or dangerousness under the Bail Reform Act factors, just with a different burden and legal standard. *Id.* (citing *United States v. Wiggins*, 613 F. Supp. 3d 348, 353-54 (D.D.C. 2020)).

## II.      RELEVANT PRODECURAL HISTORY

Kunal Mehta was arrested in California on May 13, 2025, based on the Superseding Indictment in this case. After a magistrate judge in California ordered Mr. Mehta's release, the Government sought a stay and appealed that decision to this Court, arguing that Mr. Mehta posed both a flight risk and a danger to the community. This Court ruled on June 2, 2025, that Mr. Mehta was a flight risk—and that no condition or combination of conditions could reasonably assure his appearance at trial—but that the Government had not met its burden to establish that Mr. Mehta was dangerous. (Dkt. 137 at 8, 10.)

On June 5, 2025, Mr. Mehta moved to reopen the detention hearing based on new evidence. (Dkt. 144.) The government opposed the motion. (Dkt. 146 and 162.) On June 23, 2025, the Court held a hearing on the motion, at which time Mr. Mehta's brother, Karan Mehta, testified in person, and the Government's attorney strenuously opposed release. On June 27, 2025, the Court issued its Opinion and Order on the motion. (Dkt. 163 at 6). For reasons discussed below, the Court determined that although it found Karan Mehta to be credible and the Court had "no reason to doubt that [Karan Mehta] would faithfully discharge his duty as a third-party custodian," there were nevertheless reasons to conclude that Kunal Mehta "ha[d] significant incentive to flee, and the record suggests that he ha[d] both international connections and access to covert financial resources that might make it possible to abscond to Dubai or another country from which he could not be extradited." (*Id*. at 5-6.) Accordingly, the Court denied Mr. Mehta's release pending trial. (*Id*. at 6.)

Mr. Mehta has now been detained for six months, nearly all of that time at the Northern Neck Regional Jail (NNRJ) in Warsaw, Virginia.[2] Although Mr. Mehta communicated almost

---

[2]  Mr. Mehta's family is all in California, more than 2300 miles away, and, in any event, the NNRJ does not permit *any* in-person visits from friends or family. *See generally* Johanna B Folk, et al., *Behind Bars*

3

immediately to the Government through counsel that he wished to plead guilty—and his commitment to taking responsibility and entering a plea has not wavered since that time—the process of reaching a plea agreement was severely delayed due to Mr. Mehta's custodial status.[3] First, NNRJ is a five-hour round trip drive from Washington, D.C., where his defense counsel is located. Moreover, at a critical stage in the plea negotiations, Mr. Mehta was moved without prior notice to the Government or the defense to a jail in Kentucky, a more than *fourteen hour round-trip* drive from Washington, D.C., where despite numerous attempts, his attorney could not even speak with him, much less meet with him. Mr. Mehta was then moved from Kentucky to FCI Lewisburg in Lewisburg, Pennsylvania, a more than *six-hour round trip* drive from Washington, D.C. But before undersigned defense counsel could schedule a visit, Mr. Mehta was inexplicably returned, again without notice, to NNRJ.

    Mr. Mehta is now scheduled to appear before the Court on November 17, 2025, when he will enter a plea of guilty to Count I of the Superseding Indictment. As the Court will see in the plea agreement and statement of offense, Mr. Mehta has taken full responsibility for his criminal

---

*but Connected to Family: Evidence for the Benefits of Family Contact During Incarceration*, J Fam Psychol. 2019 Apr 11;33(4):453–464, available at: https://pmc.ncbi.nlm.nih.gov/articles/PMC6625803/#:~:text=Moore%2C%202016).-,Family%20Connectedness,incarceration%20will%20receive%20frequent%20contact ("[T]hose who maintain contact with their families during incarceration tend to function more adaptively post-release. . . . These findings suggest maintaining contact with family during incarceration can facilitate more psychologically healthy adjustment during the stressful process of re-entering society."; "In-person visitation is incredibly beneficial, reducing recidivism and improving health and behavior. . . . [M]ore frequent visits lead to more consistent good behavior, better overall outcomes and post-release success.") (internal citations omitted); Leah Wang, *Research roundup: The positive impacts of family contact for incarcerated people and their families*, Prison Policy Initiative, Dec. 21, 2021, available at https://www.prisonpolicy.org/blog/2021/12/21/family_contact/. Nor is NNRJ otherwise designed to house individuals awaiting sentencing long-term. Even if the Court is not otherwise inclined to release Mr. Mehta, he respectfully requests in the alternative to be released under 18 U.S.C. § 3142(i) because it is necessary to spend time with his family, assist his counsel in preparing for sentencing, and to get his affairs in order.

[3] Malone Lam, the head of the Social Engineering Enterprise at the heart of the conspiracy charged in the Superseding Indictment, is the only other defendant in custody. The Court released all of the other defendants, at least some of whom the Government argued should be detained.

conduct. In addition, Mr. Mehta has agreed to forfeit the property and proceeds of his money laundering, including the cryptocurrency that was located in his cryptocurrency wallets and the money that was previously held in his companies' bank accounts.

### III.     ARGUMENT

**A. All of the facts that the Court pointed to as suggesting Mr. Mehta was a flight risk are now different and the undisputed facts no longer suggest that risk.**

In opposing Mr. Mehta's pretrial release back in May and June on the basis of flight risk, the Government focused on Mr. Mehta's presumed access to significant sums of money and noted that two of the defendants charged in the Superseding Indictment remained in Dubai and could potentially aid Mr. Mehta if he was released and fled the country. Dkt. 146 at 5 ("Unless Defendant is willing to identify all his bank accounts and cryptocurrency wallets, there is no other conclusion that can be arrived upon but that he continues to maintain access to large sums of money and bulk cash connections. These facts, coupled with his strong international ties and lack of community ties, support his continued pre-trial detention."). In siding with the Government and ordering that Mr. Mehta continue to be detained, the Court focused on (1) Mr. Mehta's presumed access to significant sums of money; (2) Mr. Mehta's alleged international ties; and (3) Mr. Mehta's alleged insufficient community ties. *See* Dkt. 163.

    **a. Mr. Mehta has identified all of his bank accounts and cryptocurrency wallets and forfeited those funds.**

By far the Court's and the Government's biggest concern with respect to risk of flight was the worry that Mr. Mehta had potentially millions of dollars in bank accounts and cryptocurrency wallets available to him if he were released. That concern has now been entirely obviated. As part of his plea agreement, Mr. Mehta has identified all of his bank accounts and cryptocurrency wallets, and he has forfeited those funds. As a result, this risk is no longer a risk. There is no

5

evidence or even suggestion that if released Mr. Mehta would now be able to access significant funds sufficient to allow him to flee the country.

> **b. The two co-conspirators previously in Dubai have now returned to the United States and been arrested.**

In its Opinion and Order, the Court acknowledged that neither Mr. Mehta nor his wife have family in Dubai and that "fleeing from the United States would carry significant consequences for each of them," but the Court believed that "they would both would be well-situated to relocate to Dubai if given the opportunity." Dkt. 163 at 5. This finding was largely based on the fact that "at least two of Mr. Mehta's alleged coconspirators are currently fugitives in Dubai." *Id*. But this risk, too, has now been completely removed because both of those individuals—Yarally and Demirtas—have now returned to the U.S. and been arrested. Dkt. 168 and 176 (arrest warrants returned executed). In fact, Demirtas has already pled guilty and is himself released pending sentencing. Dkt. 213. The Government is not suggesting that Mr. Mehta has other such ties to Dubai or any other country that does not extradite to the U.S. As a result, this concern, too, has fallen away.

> **c. Mr. Mehta has significant ties to the community and he is in a better position to demonstrate those ties now than he was in June.**

The Court has previously acknowledged that Mr. Mehta has ties to the community, but the Court was concerned that because his wife was not a U.S. citizen, given his access to significant funds, Mr. Mehta might relocate with her to a non-extradition country. Dkt. 137 at 8 ("Mehta's community ties, including his wife's presence in California, *weigh against a finding that he presents a flight risk*. But Mehta's wife is not a U.S. citizen. And she is unemployed. *Given Mehta's evident financial means*, Mehta could relocate both himself and his wife to a non-extradition country and prevent his participation in these proceedings.") (emphasis added).

6

Again, Mr. Mehta's "evident financial means" are no longer a concern. And other factors have also changed to weigh against any finding that he is not a flight risk. Mr. Mehta's wife, Lynn Hendricks, obtained her Green Card in September, after a difficult, two-year process. Exh. B (Declaration of Lynn Hendricks) at ¶ 6; Exh. A (Declaration of Karan Mehta) at ¶ 6. She is in the process of obtaining her driver's license, which will enable her to obtain employment. *See id.* And both Ms. Hendricks and Mr. Mehta have deep ties to the community, including very close relationships with each other's extended family. Exh. B at ¶¶ 3-5; Exh. A at ¶¶ 4-5, 7. In fact, Ms. Hendricks has been living with Karan Mehta and his family for the last six months and has grown even closer to them during this time. Exh. B at ¶ 3; Exh. A at ¶ 4. As a result, there is no evidence to support a finding that Mr. Mehta would be inclined to relocate even if he had the means to do so, which he does not.

### d. Karan Mehta is in a better position now to monitor any attempt by Mr. Mehta to flee.

Finally, although the Court found Karan Mehta to be credible and did not "doubt that Karan Mehta would faithfully discharge his duty as a third-party custodian," the Court was concerned that Karan Mehta had not had the type of insight into Mr. Mehta's life such that "Karan Mehta would be unlikely to delve into Kunal Mehta's activities as intrusively as may be necessary to discover a covert plan to flee under the circumstances presented[.]" Dkt. 163 at 5. Here, too, the current circumstances ameliorate that concern.

Certainly Mr. Mehta does not dispute that Karan Mehta had lacked any knowledge or awareness of Mr. Mehta's criminal conduct.[4] But Karan Mehta is now fully informed of the nature of Mr. Mehta's misconduct and therefore much better situated to delve intrusively into Mr.

---

[4] Presumably all appropriate third-party custodians, including the parents and others supervising the numerous individuals on pretrial and presentence release in this case, lacked insight into their supervisee's criminal conduct prior to serving as custodians.

7

Mehta's conduct if he is serving as his brother's custodian. Karan Mehta has read all of the plea agreements in this case, and the corresponding statements of offense, including Mr. Mehta's plea agreement and statement of offense. Exh. A (Declaration of Karan Mehta) at ¶ 12. Moreover, while the brothers have always been close, they were also busy adults living separately and living separate lives. Now, if released pending sentencing, Mr. Mehta and his wife will be living *in Karan Mehta's home* with Karan Mehta's wife and two children. As a result, Karan Mehta is now in a much better position to know what to look for and to adequately monitor Mr. Mehta's activities.[5]

### B. The Court can now find by clear and convincing evidence—consistent with its recent precedent—that Mr. Mehta can be released with conditions that will assure he will not flee prior to sentencing.

The Court recently considered a motion for presentence release in a case with facts arguably less favorable than Mr. Mehta's facts, and the Court released the defendant in that case. *See Edelman*, 2025 WL 1725957. For the reasons discussed below, Mr. Mehta respectfully submits that the *Edelman* case is instructive and supports an order that Mr. Mehta be released with conditions of supervision pending his sentencing.

#### a. The Court's recent decision in *United States v. Edelman*.

Douglas Edelman was "charged with orchestrating one of the largest tax-evasion schemes in American history." *Id.* at *1. Four days after being released with conditions, he violated the condition that he not contact his co-conspirators. *Id*. The Court then ordered him detained pending trial. *Id*. at *2. Six months later, Edelman entered an "open plea," in which he pleaded guilty to tax evasion for the years 2006-2012, false statements, and conspiracy, but he maintained his not guilty plea to nineteen other counts. *Id*. Edelman and the Government agreed to proceed to

---

[5] Of course, even as a third-party custodian, Karan Mehta will not have sole or even primary responsibility to supervise Mr. Mehta or monitor his compliance with his conditions of release—rather, the experienced professionals with Pretrial Services will also be monitoring Mr. Mehta's compliance.

8

sentencing on the counts for which Edelman pleaded guilty, with the idea that the Court's resolution of certain disputed issues at sentencing might obviate the need for a trial on the remaining counts. *Id*. at *2-3. Edelman then sought release pending sentencing. *Id*. at *3.

Recognizing that in light of Edelman's guilty pleas, the standard and burden for release had shifted, the Court nevertheless held that Edelman could be released if it found "'by clear and convincing evidence' that [Edelman] is not likely to flee . . . 'if released'[.]" *Id*. at *3. In its analysis, the Court evaluated Edelman's "ability to flee" and noted that: (1) Edelman had surrendered his passport; (2) his access to resources necessary to facilitate his flight was limited because his lawyers were coordinating his finances; (3) the Court could tailor his conditions of release "to accommodate for any increase in Edelman's incentive to flee . . ." by subjecting him to "home incarceration, GPS monitoring by Pretrial Services, and a prohibition on his entering, or even approaching, any airport, marina, embassy or consulate."[6] *Id*. at *3-4. The Court also noted that Edelman's partial plea "suggests that he is ready to face the consequences for his crimes[,]" and found that fact, too, weighed in favor of presentence release. *Id*. at *4.

Because Edelman had violated conditions by contacting his co-conspirators, the Court next analyzed his dangerousness. That is not an issue here, because the Court already determined that the Government had not met its burden to show that Mr. Mehta is a danger and the Government is no longer advancing any argument as to danger. In its analysis of Edelman's danger, the Court noted its trust in Edelman to comply with conditions of release "ha[d] grown significantly" during the six months of his detention. *Id*. at *4. The Court noted that its "impression of Edelman following the [hearing on the release motion] is that his time in pretrial detention has deterred

---

[6] The Court also held that on release, Edelman would not be permitted to have a smartphone, laptop, or any device that could access the internet, and he could not discuss liquidating assets with anyone other than his counsel. 2025 WL 1725957 at *5.

9

future misconduct and that his principal goal in seeking release pending sentencing is to spend time with his children and assist his attorneys in preparing for sentencing proceedings." *Id.* at *5.

The Court concluded that it "has no doubt that Edelman understands the sanctions that will follow should he abuse this Court's trust again[]" and held that having found that Edelman was not likely to flee if released pending sentencing, "the Court was required to, and did, order that Edelman be released pending sentencing." *Id*. at *5 (citing 18 U.S.C. § 3143(a)(1)).

### b. The facts in Mr. Mehta's case line up favorably with those in *Edelman* and argue in favor of presentence release.

As discussed *supra*, Mr. Mehta has now revealed and forfeited all of the remaining funds he had in bank accounts and cryptocurrency wallets. Accordingly, not only does he not have access to funds to flee—he has no such funds. Mr. Mehta has pleaded guilty to Count I and is entering a plea agreement with the Government that fully resolves the criminal charges, thus he has fully demonstrated he has accepted responsibility and is ready to face the consequences of his crimes. Moreover, unlike Edelman who was given the opportunity to show compliance with conditions of release and failed to do so, Mr. Mehta has never violated conditions of release. What the Court can look to is his lack of any record of discipline during his six months of incarceration. *See* Exh. C (Email from J. Green to A. Schmitt dated October 24, 2025) ("Since Inmate Mehta has been housed at NNRJ, he has not had any incidents or disciplinary charges put on his file.").

Mr. Mehta will consent to whatever conditions of release the Court determines are appropriate, including the types of conditions placed on Edelman. Mr. Mehta's plans if he is released are to: (1) work in whatever manner his is permitted (he understands he will probably not be permitted to work in any capacity with computers and he is willing to seek jobs that do not require that); (2) seek volunteer opportunities if permitted to do so by Pretrial Services; (3) attend religious services if permitted to do so; (4) spend time with his wife and family; (5) pursue medical

and mental health services in advance of sentencing; and (6) assist his counsel in preparing for sentencing. And Mr. Mehta understands the very serious consequences that will result if he fails to comply with any conditions of release, including not just immediately returning to detention, but potentially losing the benefits of his plea agreement.

## IV.   CONCLUSION

In light of the numerous and significant changed circumstances since Mr. Mehta's original arrest and detention in May 2025, including Mr. Mehta's guilty plea, his full acceptance of responsibility, his disclosure and forfeiture of all assets and proceeds of crimes, his lack of any disciplinary record throughout the six months he has been in custody, his brother Karan Mehta's willingness to provide a surety and serve as a custodian, and his significant community ties, Mr. Mehta respectfully urges the Court to re-open his detention hearing and re-weigh the Section 3142(g) factors and conclude that Mr. Mehta should be released pending his sentencing.

Respectfully submitted,

KROPF MOSELEY SCHMITT PLLC

Dated: November 13, 2025

*/S/ Addy R. Schmitt*
Addy R. Schmitt
KROPF MOSELEY SCHMITT PLLC
1100 H Street, NW
Suite 1220
Washington, DC 20005
addy@kmlawfirm.com
(202) 627-6900

*Attorney for Kunal Mehta*